[No. B147033. Second Dist., Div. Six. Jan. 22, 2002.]

In re KELLY W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KELLY W., Defendant and Appellant.

## COUNSEL

Douglas G. Benedon, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Myung Park, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—An intoxicated minor is lawfully questioned by a police officer. The minor tells the officer his name is Kelly K. The last name on his birth certificate is W.-K., a hyphenated name. Here we conclude the evidence is insufficient to prove the minor falsely identified himself to a police officer.

Kelly W. (Kelly) appeals a judgment of the juvenile court finding the allegations of an amended petition under Welfare and Institutions Code section 602 to be true and that he committed the offenses of willful failure to return to custody (Welf. & Inst. Code, § 871, subd. (c), count 1); public intoxication (Pen. Code, § 647, subd. (f), count 2);[1] and giving false information to a police officer (§ 148.9, subd. (a), count 3). The court continued Kelly's wardship and released him to the custody of his mother on terms and conditions of probation. We conclude, among other things, that substantial evidence does not support the trial court's finding that Kelly gave a false name to a police officer. We reverse as to count 3, in all other respects we affirm.

## FACTS

Kelly was in the custody of the Colston Youth Center. He obtained a day pass to leave the facility to go to his mother's home. He left but did not return to the center. The court issued a warrant for his arrest. Throughout the juvenile court proceedings, Kelly was "known by everybody in the courtroom" as Kelly W.

Police Officer Ryan Weeks responded to a radio call reporting that a person (Kelly) was passed out on the sidewalk. When Weeks arrived at the scene, he noticed that Kelly had slurred speech, red and watery eyes, and a

---

[1] All statutory references are to the Penal Code unless otherwise stated.

strong odor of alcohol on his breath. Kelly told Weeks he had been drinking beer and had fallen asleep on the sidewalk. Kelly had urinated in his pants and was walking in an unsteady manner. Weeks concluded that Kelly was intoxicated and "unable to care for his own safety."

Kelly told Weeks that his name was Kelly K., provided the officer his correct date of birth, and was cooperative. Weeks took Kelly to the hospital before he took him to juvenile hall.

At trial, Kelly's mother testified that Kelly's legal name is "Kelly . . . [W.-K.]." Her last name was W. and Kelly's father's last name is K. On Kelly's birth certificate, his first name is Kelly and his last name is W.-K.

The court found that Kelly gave Weeks the wrong name. It stated: "I suppose he could have technically given the name Kelly [W.] and that still wouldn't have worked because that is not his name. Certainly, that's the name known by everybody in the courtroom . . . ."

## DISCUSSION

Kelly contends that there was insufficient evidence to prove that he falsely identified himself to a police officer. We agree.

"Any person who falsely represents or identifies himself . . . as another person or as a fictitious person to any peace officer . . . upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor." (§ 148.9, subd. (a); *In re Ivan J.* (2001) 88 Cal.App.4th 27, 29 [105 Cal.Rptr.2d 382].) The purpose of this law is to require the defendant to give "sufficient information to allow law enforcement to locate the person if he or she does not appear in court." (*In re Ivan J.,* at p. 31.) In reviewing the evidence, we draw all reasonable inferences to support the judgment and resolve neither credibility issues nor evidentiary conflicts. (*People v. Hatch* (2000) 22 Cal.4th 260, 272 [92 Cal.Rptr.2d 80, 991 P.2d 165]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

In assessing a claim of insufficiency of the evidence, our "task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618], citing

*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

 Kelly told Weeks that his name was Kelly K. He contends the name he gave to the officer was accurate because the first name on his birth certificate is Kelly and the last name is K.

The court found that Kelly gave a false name because he did not say W.-K., the hyphenated last name on his birth certificate. That name is a combination of his mother's and father's surnames. The prosecution alleged that Kelly falsely identified himself "as another person and a fictitious person."

But the only evidence the prosecution presented at trial was Weeks's testimony that Kelly said his name was Kelly K. It produced no evidence to show that Kelly K. was either a false name or another person. Nor did it show why Kelly could not use his first and last name on his birth certificate to identify himself. In closing argument, the prosecutor argued that Kelly K. was not a name Kelly customarily used. Court documents listed his name as Kelly W., but the prosecution produced no evidence showing that this was a name he commonly used. Indeed, the court stated that if Kelly had told Weeks his name was Kelly W., that also would be a false name because it was not W.-K. Yet, the court referred to the minor throughout the proceedings as Kelly W. and entered judgment in that name.

The prosecution did not show Kelly falsely represented himself. Kelly did not change his name, he only used his father's surname. For a child, "identification with the paternal surname may give the child a healthy sense of family . . . or his rightful link with an absent or noncustodial father. [Citation.]" (*In re Marriage of Schiffman* (1980) 28 Cal.3d 640, 646 [169 Cal.Rptr. 918, 620 P.2d 579].) Some experts have opined that where, as here, the child's last name is a hyphenated surname, requiring the child to use it may be " 'too much to saddle a child with.' " (*In re Marriage of Douglass* (1988) 205 Cal.App.3d 1046, 1056 [252 Cal.Rptr. 839].) Courts have thus favored name flexibility in such cases. (*Ibid.*)

The Attorney General contends that this case is similar to *People v. Hunt* (1990) 225 Cal.App.3d 498, 502-503 [275 Cal.Rptr. 367], where the defendant said his name was Paul Hunt instead of Bruce Hunt, his true name. But in that case, the defendant fabricated a false first name which was not on his birth certificate. That is not the case here.

The Attorney General contends Kelly gave his father's last name to be deceptive. But it was the prosecution's burden to prove Kelly intended to

evade the process of the court, or to evade proper identification. It did not show whether he previously used this name or whether his parents disapproved of it. Moreover, Weeks testified Kelly was cooperative, admitted his guilt, and provided his correct birth date. There was no evidence the police were unable to trace the warrant using the name Kelly K. with his correct date of birth.

The dissent believes there was sufficient evidence from which the trial court could draw the inference that by not telling the officer his full hyphenated last name, Kelly intended to falsely identify himself. At best, such an inference is a "stretch," so tenuous compared to the facts that compel the opposite conclusion, that it dissipates like steam from a kettle.

It is indisputable that Kelly did not represent himself as another person. The information he gave the officer allowed the officer to identify him.

The evidence was insufficient to show that Kelly falsely identified himself.

The judgment as to count 3 is reversed; in all other respects it is affirmed.

Perren, J., concurred.

**YEGAN, J.**—I respectfully dissent. One need only to read the case caption to see that there is something wrong here.

Kelly W. was arrested after he was found drunk and asleep on a Ventura sidewalk. When roused by a Ventura police officer, Kelly said his name was "Kelly K." By that time, he had been a fugitive from juvenile custody for about two months. The petition under which he was incarcerated, the day pass that allowed him to leave custody, and the bench warrant prepared after he failed to return were all issued under the name "Kelly W." This is the same name under which Kelly W.'s nine prior arrests were recorded. His birth certificate, however, states that his legal name is "Kelly . . . [W.-K.]."

The majority conclude there is no substantial evidence that "Kelly K." was a false name or that appellant used it with the intent to evade the court's processes. In so holding, the majority improperly reweigh the evidence and make the same fundamental mistake that the Court of Appeal did in *People v. Rodriguez* (1999) 20 Cal.4th 1, 11-12 [82 Cal.Rptr.2d 413, 971 P.2d 618]. Our only task is to determine whether " 'on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to

the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103], quoting *People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) Under that standard, the juvenile court judge's factual findings must be affirmed.

Substantial evidence shows that Kelly W. had been arrested, adjudicated a delinquent, placed on probation, remanded to custody, and given a furlough from which he failed to return, all under the name "Kelly W." He nevertheless told the arresting officer that he was "Kelly K." Now what could have motivated him to suddenly use only his father's last name? To ask the question is to answer it. A rational trier of fact could conclude that this was a false identification because Kelly W. did not use the name that appears on his birth certificate or the name he used in prior contacts with law enforcement and the juvenile courts. (*In re Ivan J.* (2001) 88 Cal.App.4th 27, 30 [105 Cal.Rptr.2d 382].) A rational trier of fact could also reasonably deduce that he used the false name because he was a fugitive and hoped to avoid arrest on the failure to return charge. The juvenile court judge could therefore rationally find beyond a reasonable doubt that appellant gave the police officer a false name with the requisite intent, in violation of Penal Code section 148.9, subdivision (a). Accordingly, I would affirm the judgment as to count 3.